UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE EISENHART,<br>Plaintiff<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>Defendant. | Case No. 2:17-cv-00979-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

**I. PROCEDURAL HISTORY**

Plaintiff filed a complaint against the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") seeking review of the Commissioner's denial of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 12, 13] and briefs addressing the disputed issues in the case [Dkt. 23 ("Pltf.'s Br."), Dkt. 30 ("Def.'s Br.")]. The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be remanded for further proceedings.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On January 24, 2013 and February 28, 2013, Plaintiff filed applications for DIB and SSI, alleging that she became disabled as of October 29, 2012. [Dkt. 13, Administrative Record ("AR") 83-83, 145-149.] The Commissioner denied her claim initially on July 19, 2013. [AR 62-71, 72-81.] On December 21, 2014, a hearing was held before Administrative Law Judge ("ALJ") Edward P. Schneeberger. [AR 32-61.] On April 29, 2015, the ALJ issued a decision denying Plaintiff's claims. [AR 18-31.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 404.1520(b)-(g)(1) 416.920(b)-(g)(1). At step one, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2016 and has not engaged in substantial gainful activity since October 29, 2012, the alleged onset date. [AR 23-24.] At step two, the ALJ found that Plaintiff suffered from the severe impairments of fibromyalgia and obesity. [AR 24 (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c).] Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 25-26 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).]

The ALJ found that Plaintiff had the following residual functional capacity (RFC):

> Full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) in that claimant is limited to lift/carry 50 pounds occasionally and 25 pounds frequently. She is further limited to standing/walking 6 hours and sitting for 6 hours in an 8-hour day.

[AR 24-27.] Applying this RFC, the ALJ found that Plaintiff is able to perform past relevant work as a medical biller coder and data entry operator and, thus, is not disabled. [AR 27.]

Plaintiff requested review of the ALJ's decision, and on December 13, 2016, the Appeals Council denied review. [AR 1-7.] This action followed.

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

### IV. DISCUSSION

Two physicians rendered opinions about Plaintiff's mental limitations. A non-examining state agency consultant, Dr. Richard J. Milan, Jr., Ph.D., rendered his opinion in July 2013. [AR 62-66.] Subsequently, at the hearing, the ALJ ordered that a consultative psychologist evaluate Plaintiff. [AR 56.] On January 16, 2015, Dr. Rosa Colonna, Ph.D., a consultative examiner retained by the state agency, examined Plaintiff and prepared a report with her opinion. [AR 392-404.] Plaintiff's sole contention is that the opinion of Dr. Colonna was improperly rejected by the ALJ. [Pltf.'s Br. at 4-16.] For the reasons set forth below, the Court agrees.

"The opinion of an examining physician…is entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended April 9, 1996. "If the opinion of an examining physician is contradicted by the opinion of another doctor, it may nevertheless be rejected only 'for specific and legitimate reasons that are supported by substantial evidence in the record.'" *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) (quoting *Lester*, 81 F.3d at 830-831). "The opinion of a nonexamining physician cannot by itself

3

constitute substantial evidence that justifies the rejection of the opinion [of] an examining physician." *Lester*, 81 F.3d at 831.

Dr. Colonna completed a psychological evaluation of Plaintiff that included a mental status examination, Beck Depression Inventory II, Trail Making Test (Parts A & B), and a Wechsler Adult Intelligence Scale (Fourth Edition) exam. [AR 392.] Dr. Colonna diagnosed Plaintiff with a mood disorder and personality disorder with borderline histrionic traits. [AR 396.] She noted that Plaintiff's Trails A and B results were within normal limits, she had an IQ of 86 (within normal limits), and a GAF score of 60. [AR 396-397.] She also noted that Plaintiff's Beck score indicated severe depression but noted possible exaggeration of symptoms given Plaintiff's report of her daily activities. [AR 396.] In addition, Dr. Colonna completed a mental assessment questionnaire in which she opined that Plaintiff is *moderately limited* in her ability to: (1) understand and remember very short and simple instructions; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for sustained periods; (5) perform activities within a schedule, maintain attendance; (6) work in coordination within a proximity to others without being distracted by them; (7) sustain an ordinary routine without special supervision; (8) complete a normal work-day and work-week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (9) interact appropriately with the general public; (10) accept instructions and respond appropriately to criticism; (11) get along with peers; (12) maintain socially appropriate behavior; (13) respond appropriately to changes in a work setting; and (14) set realistic goals or make plans independently of others. [AR 398-401.] Dr. Colonna also opined that Plaintiff is *slightly limited* in her ability to: (1) remember locations and work-like procedures; (2) carry out very short and simple instructions; (3) make simple work related decisions; (4) ask simple questions or request assistance; and (5) to be aware of normal hazards and take appropriate

4

precautions. [*Id.*]

The ALJ rejected the mental status examination questionnaire completed by Dr. Colonna and rejected her diagnosis of a personality disorder. [AR 26.] The ALJ instead gave "great weight" to the non-examining state agency consultant, Dr. Milan, Jr., who reviewed Plaintiff's file in July 2013 and indicated that Plaintiff did not have a severe mental impairment. [*Id.*]

The ALJ provided three reasons for rejecting Dr. Colonna's evaluation. First, the ALJ found that Dr. Colonna's opinion was internally inconsistent. [AR 26.] Specifically, the ALJ noted that the mental assessment questionnaire showed "moderate limitations in 14 of 20 functional areas," yet Dr. Colonna opined that Plaintiff had "no mental limitations" and noted a GAF of 60. [*Id.*] First, as Plaintiff correctly points out, according to the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994), a GAF of 60 is reflective of *moderate symptoms* (e.g., flat affect and circumstantial speech, occasional panic attacks) or *moderate difficulty* in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). Thus, a GAF score of 60 is consistent with Dr. Colonna's mental assessment, which noted numerous moderate limitations. In addition, Dr. Colonna did not opine that Plaintiff had "no mental limitations" so it is unclear to the Court what the ALJ was referring to.

The Commissioner argues that Dr. Colonna's report was inconsistent in that she stated that Plaintiff would have "a *mild* inability to understand, remember, and carry out detailed instructions" and "a *mild* inability to interact appropriately with supervisors, coworkers, and peers on a consistent basis," but these limitations were listed as "moderate" on the questionnaire. [Def.'s Br. at 5.] However, the ALJ did not identify this rationale to support his findings. The Court may not rely on reasons the ALJ did not provide to affirm the ALJ's decision. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts"); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (noting that the

Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").[1] Accordingly, the ALJ's finding that the opinion of Dr. Colonna is internally inconsistent is not supported by substantial evidence.

Second, the ALJ found that Plaintiff's "lack of consistent treatment is persuasive to conclude that [Plaintiff] does not have a severe mental impairment." [AR 26.] An ALJ may properly rely on unexplained or inadequately explained failure to seek treatment. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). However, Plaintiff testified at the hearing that she did not seek continuous treatment because she was in denial about her mental condition and even when she realized she needed medical treatment, her mood often affected whether she was able to leave her house to attend her therapy sessions. [AR 51-52.] She now has a psychologist that can come to her house if she is unable to go to the office. [AR 51.] Courts have recognized that many individuals suffering from mental conditions such as depression do not recognize that their condition reflects a potentially serious medical illness. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Plaintiff "may have failed to seek continuous psychiatric treatment for h[er] mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* (internal quotations omitted). Given Plaintiff's testimony at the hearing, the Court finds that a lack of objective medical evidence regarding Plaintiff's continuous mental health treatment

---

[1] The Court notes that the ALJ would not have ordered an additional evaluation to supplement the record regarding Plaintiff's mental limitations if he did not believe the record (prior to Dr. Colonna's evaluation) was ambiguous or inadequate to allow for proper evaluation of Plaintiff's mental limitations. Thus, if the ALJ perceived an inconsistency in Dr. Colonna's report and, thus, the supplementation did not sufficiently develop the record, the ALJ should have contacted Dr. Colonna or otherwise attempted to resolve the conflict. *See Webb v. Barnhart*, 433 F.3d 683 (9th Cir. 2005) (explaining that duty to enlarge the record only arises if the evidence is ambiguous, the ALJ finds that the record is inadequate, or the ALJ relies on an expert's conclusion that the evidence is ambiguous).

is not a legitimate basis for rejecting Dr. Colonna's findings regarding Plaintiff's mental limitations.

Third, the ALJ concluded that Dr. Milan, Jr.'s opinion was "consistent with the overall treatment record," but does not specify as to which portions of the medical record he is referring to. [AR 26.] The Court notes that Dr. Milan, Jr. did not review Dr. Colonna's evaluation (which post-dated his opinion) and did not have access to the medical records from Rio Honda, which had not been submitted by the time of his review. The Court finds that the record, when view as a whole, is consistent with the "moderate" mental limitations found by Dr. Colonna.

Upon initial evaluation by Pacific Clinics on April 20, 2010 (prior to Plaintiff's October 29, 2012 onset date), Plaintiff reported symptoms of depression, anger outbursts, and mood disorders for many years and explained that she had treatment in the past but stopped when her psychiatrist closed her practice. [AR 231.] Plaintiff reported two suicide attempts in the past, a history of taking prescribed medications for mental health issues, and domestic abuse by her former husband. [AR 232.] A medical note dated December 20, 2012 from Plaintiff's primary care doctor indicates that Plaintiff's bipolar condition is not controlled. [AR 257.] Rio Honda closed her case and she was told by another clinic, Pacific Clinics, said they would not take people over 21 years of age. [*Id.*] She was experiencing social anxiety and could not drive due to her medications. [*Id.*] Two years later, on March 21, 2014, Plaintiff reported to her primary physician at Alta Med that her "psych meds" were not effective. [AR 313.] Subsequently, on August 19, 2014, Plaintiff was seen at the American Indian Counseling Center. [AR 349-350.] Plaintiff reported feeling overwhelmed, depressed, and suicidal after trying to attend school. [AR 350.] The report indicates Plaintiff has severe functioning issues meeting the medical necessity for care. [AR 357.] A couple of days later, on August 21, 2014 examination, Plaintiff displayed agitated motor activity during both sessions, difficulty concentrating, impaired judgment and insight, persecutory

delusions, daily thoughts of suicide, and exhibited tearful and manic behavior. [AR 363-367.] Plaintiff was diagnosed with bipolar disorder, most recent episode, mixed, in partial remission with a GAF score of 41. [AR 368.] Medical notes from September 23, 2014 indicate that on August 28, 2014 Plaintiff went to urgent care because of issues with her medications upsetting her stomach, causing shakiness, and not being effective. [AR 374.] Plaintiff had suicidal ideations, vague paranoid ideations, and marginal attention, memory, insight, and judgment. [AR 375.] On November 10, 2014, Plaintiff was admitted for voluntary inpatient care after a psychiatric and mental assessment to prevent a self-harm situation. [AR 405.] She was diagnosed with major depression, rule out bipolar with depression and a GAF score of 30. [*Id.*]

The Commissioner argues that many of Plaintiff's medical records are from before her alleged onset date or involve self-reports of her mental condition. [Def.'s Br. at 7-8.] The Court does not find these arguments persuasive. As summarized above, the record includes medical records post October 2012 regarding Plaintiff's mental impairments and while many of the records includes Plaintiff's self-assessments, the ALJ did not make an adverse credibility finding against Plaintiff, so there is no reason to assume that Plaintiff's self-assessments are not credible. Thus, the record, when viewed as a whole, is consistent with the "moderate" mental limitations found by Dr. Colonna.

Accordingly, the Court finds that the ALJ rejected the opinion of Dr. Colonna without setting forth at least one specific and legitimate reason. This was error, and the Court cannot say that it was harmless. Remand is warranted.

## V. CONCLUSION

The decision of whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully

developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* A remand for an immediate award of benefits is appropriate "only in 'rare circumstances.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

The Court finds that remand is appropriate because the circumstances of this case do not preclude the possibility that further administrative review could remedy the ALJ's errors. At a minimum, in evaluating the opinion of Dr. Colonna, the ALJ should consider the factors called for under 20 C.F.R. §§ 404.1527(c) and 416.927(c) and develop any inadequacies in the medical record. *See Trevizo*, 871 F.3d at 675. The Court therefore declines to exercise its discretion to remand for an immediate award of benefits. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, "except in rare circumstances"); *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.").

For all of the foregoing reasons, **IT IS ORDERED** that:
(1) the Decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: February 23, 2018  _____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE